**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1782-19

IN THE MATTER OF
ALBERTO APONTE,
ESSEX COUNTY,
DEPARTMENT OF CORRECTIONS.

_____

Submitted June 3, 2021 – Decided July 20, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the New Jersey Civil Service Commission, Docket No. 2019-1614.

Courtney M. Gaccione, Essex County Counsel, attorney for appellant/cross-respondent Essex County (Jill Caffrey, Assistant County Counsel, on the briefs).

Caruso Smith Picini, PC, attorneys for respondent/cross-appellant Alberto Aponte (Zinovia H. Stone, on the brief).

Gubrir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Craig S. Keiser, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

The Civil Service Commission (Commission) adopted the Administrative Law Judge's (ALJ) initial decision overturning the Essex County Department of Corrections' (DOC) termination of Sergeant Alberto Aponte due to a violation of the DOC's drug policy. The Commission agreed with the ALJ's recommendation that Aponte be suspended without pay for six months, demoted from the rank of sergeant, and subjected to random drug tests twice a month for a year upon reinstatement. The DOC appeals, contending Aponte should be terminated. Aponte cross-appeals, contending he did not violate the drug policy because he unknowingly consumed an illegal substance and, therefore, should not be disciplined.

Based on our review of the record and applicable law, both parties' contentions lack sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E). We therefore affirm substantially for the reasons stated by the ALJ in her cogent initial decision as adopted by the Commission. We add the following brief comments.

Appellate review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches" to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div.

2

1993)).  Thus, we generally defer to final agency actions, only "reversing those actions if they are 'arbitrary, capricious or unreasonable or [if the action] is not supported by substantial credible evidence in the record as a whole.'"  N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  We must defer even if we would have reached a different result.  In re Carter, 191 N.J. 474, 483 (2007) (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).  It is not our role to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance."  In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

It was undisputed that a random drug test revealed Aponte tested positive for a controlled dangerous substance (CDS), benzoylecgonine (a derivative of cocaine), that he did not declare on his drug testing medical information form. He linked the test results to his ingestion of a supplement, Inka Leaf.  Aponte did not notice that the product's bottle stated it contained a banned substance. It was uncontested that Aponte was trained on banned coca-leaf products.  The ALJ's findings of facts and conclusion stated that Aponte was not a drug abuser

but, despite being sufficiently trained, he violated DOC policy by digesting Inka Leaf.

We conclude there is no basis to disagree with the Commission's acceptance of the ALJ's recommendation to eschew termination and give Aponte "a second chance" by limiting discipline to suspension without pay, demotion, and random drug testing. Relying on Town of W. New York v. Bock, 38 N.J. 500, 523 (1962) and In re Hermann, 192 N.J. 19, 33-34 (2007), progressive discipline was invoked—despite the seriousness of the offense—due to Aponte's eight-year tenure at the DOC with no disciplinary history. Consequently, we reject the DOC's argument that the Commission's decision was "arbitrary, capricious, unreasonable[,] and lacked fair support in the record."

We likewise dismiss Aponte's argument that he involuntarily tested positive because he did not know he was ingesting a banned substance and, thus, did not violate the DOC's drug policy. He argues his "ingestion of a substance that ultimately led to a positive drug test was not the product of his effort . . . but [due to] the manufacturer's failure to clearly list the ingredients on the 'Inka Leaf' . . . bottle, and the fact that [he] was . . . not a botanist or chemist."

Claiming he believed in good faith that Inka Leaf was free of any illicit substances, Aponte mistakenly relies on State v. Baum, 224 N.J. 147 (2016), to

establish a defense of involuntary consumption. In <u>Baum</u>, which determined whether jury charges conflated self-induced intoxication with diminished capacity, our Supreme Court held:

> "Self-induced intoxication" is defined as "intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime." N.J.S.A. 2C:2–8(e)(2).
>
> . . . .
>
> However, "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial." N.J.S.A. 2C:2-8(b).
>
> [<u>Id.</u> at 161-62 (alteration in original).]

Aponte was reckless in not being aware that the supplement could cause a positive drug test. The Commission therefore agreed with the ALJ that, given his training, Aponte should have known whether the supplement contained a CDS. The record supports that determination.

Considering our deferential review of the Commission's decisions, neither the DOC nor Aponte have shown that the disciplinary action imposed should be disturbed.

5

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

6

A-1782-19